UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GEORGE MARQUEZ, JAVIER RODRIGUEZ,
and WIDALYS GONZALEZ,

                Plaintiffs,                **COMPLAINT**
                                                    Civ. No.:

vs.

                                                    **JURY TRIAL DEMANDED**

COCA-COLA ENTERPRISES INC.,
COCA-COLA BOTTLING COMPANY
OF ROCHESTER,

                Defendants.

## INTRODUCTION

1.    This is an action for discrimination and retaliation in violation of
the Civil Rights Act of 1991, 42 U.S.C. § 1981, *et. seq.*, and the
New York State Human Rights Law Section 290, *et seq.* Plaintiff
seeks compensatory and punitive damages in an amount to be
determined at the time of trial.

2.    Jurisdiction of this Court is specifically invoked pursuant to the
aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1334,
1343(4) and 29 U.S.C. § 621 *et seq.* This action also arises under
42 U.S.C. § 1981.

3.    Venue properly lies in the Western District of New York pursuant to 28 U.S.C. §1391(b) and 29 U.S.C. §1132(e)(2), because the claim arose in this judicial district, the defendant is doing business through a division in this District, and Plaintiffs are residents of this district.

## PARTIES

4.    Plaintiff, GEORGE MARQUEZ, is a Hispanic male, and at all times relevant, is a resident of Rochester, New York.

5.    Plaintiff, JAVIER RODRIGUEZ, is a Hispanic male, and at all times relevant, is a resident of Rochester, New York.

6.    Plaintiff, WIDALYS GONZALEZ, is a Hispanic female, and at all times relevant, is a resident of Rochester, New York.

7.    Upon information and belief, the defendant is a domestic corporation organized and existing under the laws of the State of New York, with its principal office located in Rochester, New York.

## FACTUAL BACKGROUND

8.    Plaintiff Marquez and Plaintiff Rodriquez have been employed by
      the defendant since 2004 as a Machine Operator.

9.    Plaintiff Gonzalez has been employed by the defendant since April
      2005 and also works as a Machine Operator.

10.   Under the defendant's employ, Plaintiffs and other Hispanics have
      been subjected to disparate terms and conditions of employment.

11.   Plaintiff Marquez was initially hired by the defendant to work the
      first shift, however shortly after, defendant's asked him to
      temporarily work the second shift based upon his working skill and
      experience.

12.   Although defendant's told Plaintiff Marquez that the second shift
      position was only a temporary accommodation, they refused to let
      him return to the first shift while non-Hispanics have been placed
      on the first shift.

13.   Plaintiff Marquez has made a series of complaints to management
      regarding defendant's unfair working conditions, including calls to

Page -3-

Headquarters in Atlanta and complains to Troy Ellis, Vice President of North East Region, in or around the middle of August 2007.

14. After this complaint, on or around August 28, 2007, Plaintiff Marquez was suspended for forty-eight (48) hours by Production Manager Bill Clark ("Production Manager Clark") due to a mild verbal altercation wherein a Russian coworker cursed at the Plaintiff.

15. Plaintiff Marquez was threatened with termination, and was instructed that he would be terminated if he engaged in another incident; whereas the Russian employee was not even suspended.

16. Prior to this incident, Plaintiff Marquez's work performance has always been acceptable and he did not receive any discipline.

17. Other non-Hispanics have not been disciplined or terminated under much more severe circumstances; such as when employee Pat Ludeki, a Caucasian Forklift Operator, threatened employee Alex Silva, a Hispanic, with a pocket knife, and was only given a verbal warning. Pat Ludeki was sent home early, only after Alex Silva indicated he did not feel safe working with him, yet Ludeki was not suspended.

Page -4-

18.    Throughout the duration of Plaintiffs' employment, Hispanics have
       been forbidden from speaking Spanish at the defendant's facilities.

19.    On or around October 11, 2007, Production Manager Clark
       informed employees during a staff meeting that if any Americans
       complained about employees speaking Spanish, that employee
       would be subject to disciplinary actions up to termination.

20.    Plaintiffs' and other Hispanic employees complained to the Human
       Resource Director, Ralph LaMoyne about the "English Only" policy,
       yet no effective remedial action was taken regarding their complaint
       and instead the work environment became more hostile.

21.    Non-Hispanic employees are constantly telling Hispanic employees
       "English only, English only, you can't speak Spanish", are always
       mocking Hispanic employees, and watching the Hispanic
       employees to ensure they do not speak Spanish.

22.    On or about November 30th, 2007, Plaintiffs Rodriquez and
       Gonzalez filed complaints with the EEOC alleging in good faith that
       they had been continually discriminated against by the defendant
       based upon his national origin.

23.    On or about December 7th, 2007, Plaintiff Marquez filed a charge of
       discrimination with the Equal Employment Opportunity Commission
       ("EEOC"), alleging in good faith that he had been subject to a
       continuing and pervasive unlawful hostile work environment by the
       defendant based upon his national origin.

24.    After filing the aforementioned EEOC charge, Plaintiff Marquez was
       subjected to a continuing pattern of retaliation at the hands of the
       defendant; specifically, Plaintiff Marquez's work has been overly
       scrutinized and has been the subject of undue discipline, which the
       defendant is garnishing in an attempt to terminate the Plaintiff for
       engaging in a protected activity.

25.    Additionally, Plaintiff Marquez was the only employee in his
       department to receive a 1% raise while every other employee
       received between 3-6% raises, despite Plaintiff having a better
       attendance record and skill set.

26.    Plaintiff Rodriquez and Plaintiff Marquez were continually denied
       salary increases throughout their employ with the defendant, that
       other non-Hispanic employees enjoyed.

Page -6-

27. Plaintiff Marquez filed another charge with the EEOC on or around May 4th, 2009, alleging in good faith that he had been subject to continuing patters of unlawful retaliation under Title VII and the New York State Executive Law.

28. Plaintiff Marquez received a Notice of Right to Sue on August 3rd, 2009.

29. Thereafter, on August 12th, 2009, Plaintiffs were told that the defendant's were closing production "because a lot of people were complaining."

30. On November 10th, 2009, Plaintiffs were officially laid off as a result of these "complaints".

31. Plaintiffs have continually attempted to find lateral employment within defendant's company, yet have been consistently denied jobs, despite their seniority and greater workmanship ability.

32. Additionally, on February 23rd, 2009, Plaintiff Gonzalez received a birthday card from the defendant, in which one employee wrote "sexy puta" in Spanish, which translates to "sexy bitch" in English.

Page -7-

33.	The same employee then went and boasted to Plaintiff Rodriguez
	about what he had written to Plaintiff Gonzalez.

## FIRST CASE OF ACTION
## DISCRIMINATION UNDER *42 U.S.C. § 1981*

34.	Plaintiffs repeat and re-allege by reference each and every
	allegations contained in paragraphs stated above and incorporates
	the same as though fully set forth herein.

35.	In engaging in the conduct described above, defendant deprived
	plaintiffs of their civil rights pursuant to 42 U.S.C. §1981, in
	particular, the racial discrimination suffered by Plaintiffs violated the
	Plaintiffs' Fourteenth Amendment right to Equal Protection of the
	law.

36.	The discriminatory treatment suffered by the Plaintiffs on account
	of their national origin was egregious and shocking to the
	conscience.  As a direct result, Plaintiffs were caused to undergo
	the humiliation and indignities from the racial discrimination they
	suffered, and was caused and will continue to undergo and endure
	severe mental anguish, humiliation and economic hardship as a
	consequence thereof.

37.	Such deprivations were in violation of the rights secured to plaintiffs
	by the First, Fourth and Fourteenth Amendments to the United

States Constitution and by Title 42 U.S.C. § 1983, in particular the Equal Protection Clause.

38.     As a result of the defendant's deprivations of Plaintiffs' civil rights, Plaintiffs have been damaged in an amount to be determined by a jury at the time of trial.

39.     That Plaintiffs demands costs and attorney fees pursuant to 42 U.S.C. §1988.

## SECOND CAUSE OF ACTION
## RETALIATION UNDER 42 U.S.C. 1981

40.     Plaintiffs repeat and re-allege by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

41.     Plaintiffs' harassment began immediately after making complaints to defendant's Human Resources Department. Specifically, non-Hispanic employees would continually harass Plaintiffs by stating "English Only policy", mocking Hispanic employees, and watching the Hispanic employees to ensure they do not speak Spanish. Plaintiff Marquez received his first disciplinary action after a minor verbal altercation with a Russian employee, in which the Russian employee cursed at the Plaintiff, yet the Plaintiff received the suspension. Additionally, Plaintiff Marquez's work began being

heavily scrutinized and began receiving undue disciplinary actions in an effort to terminate him immediately after filing a charge of discrimination with the EEOC complaint in retaliation for the Plaintiff having engaged in protected activity under the law. Specifically, Plaintiff Marquez filed his first charge of discrimination with the Equal Employment Opportunity Commission and the New York State Division of Human Rights on December 7th, 2007, Agency Charge No. 846-2008-08969, pursuant to the work-share agreement between the two agencies. Plaintiff Marquez, a Hispanic male, alleged that he was subject to disparate treatment in the workplace based on his national origin and that he was suspended in retaliation for having complained about his work environment. Immediately afterwards, Plaintiff Marquez's work became highly scrutinized and became subject to undue disciplinary actions. Plaintiff filed a subsequent charge of discrimination on May 4th, 2009, Agency Charge No. 525-2009-00694 alleging further discrimination and retaliation for having filed Agency Charge No. 846-2008-08969. As a result, on August 12th, 2009, Plaintiffs were told that the defendant's were closing production directly "because a lot of people were complaining." On November 10th, 2009, Plaintiffs were officially laid off as a result of these "complaints". Plaintiffs have continually attempted to find lateral employment within defendant's company, yet have been consistently denied jobs, despite their seniority and greater workmanship ability.

Page -10-

42.    That by formally protesting the conditions of their work place with
       management, and by filing their charges of discrimination with the
       EEOC on November 30th , 2007, December 7th, 2007 and May 4th,
       2009, Plaintiffs engaged in protected activity under 42 U.S.C §
       1981.

43.    That there was a causal connection between Plaintiffs engagement
       in protected activity when they complained to the Vice President,
       Human Resources Department and the EEOC and their retaliatory
       adverse employment actions commencing immediately thereafter,
       in addition to defendant's closing their production department as a
       direct result of their complaints.

44.    Defendant engaged in a pattern of illegal retaliation because the
       Plaintiffs had complained of discrimination based upon race, which
       encompasses ancestry and/or ethnic characteristics and retaliation.
       Defendant had no legitimate business reason for these actions.

45.    As a direct and proximate result of Defendant's willful, knowing and
       intentional discrimination against them, Plaintiffs have suffered and
       will continue to suffer pain and suffering and extreme and severe
       mental anguish and emotional anguish and emotional distress; they
       have incurred and will continue to incur medical expenses for
       treatment by health care professionals, and for other incidental
       expenses, and they have suffered and will continue to suffer a loss

of earnings and other employment benefits and job opportunities. Plaintiffs are thereby entitled to general and compensatory damages in amounts to be proven at trial.

46.   As a further and proximate result of Defendant's violations of 42 U.S.C. § 1981, Plaintiffs have been compelled to retain the services of counsel in an effort to enforce the terms and conditions of the employment relationship with Defendants and each of them, and has thereby incurred and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiffs. Plaintiffs request that attorney fees be awarded.

47.   Defendants conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiffs rights. The acts were performed with the knowledge of defendants' economic power over Plaintiffs. Defendant ratified the unlawful conduct of its employees in this action. Consequently, Plaintiffs are entitled to punitive or exemplary damages from all Defendants.

## THIRD CAUSE OF ACTION
## DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW, § 290 *et seq.*

48.   Plaintiffs repeat and re-allege by reference each and every allegations contained in the above stated paragraphs and incorporates the same as though fully set forth herein.

49.    Defendant engaged in a continuing pattern of unremedied race discrimination by subjecting Plaintiffs to disparate treatment based on race in violation of The New York State Human Rights Law, ("NYSHRL") Executive Sections 290, *et seq*. This claim does not raise a novel or complex issue of law.

50.    Defendant at all times relevant herein had actual and constructive knowledge of the conduct described herein.

51.    As a result of the discriminatory treatment based on race that resulted in Plaintiffs' adverse employment actions, the Plaintiffs suffer from severe emotional distress.

52.    Defendants violated the NYSHRL as amended, by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of the defendant as described above.

53.    Defendant failed to comply with their duty to take all reasonable and necessary steps to eliminate harassment from the workplace and to prevent it from occurring in the future.

54.    As a direct and proximate result of the defendant's willful, knowing and intentional discrimination against them, Plaintiffs have suffered and will continue to suffer pain and suffering and extreme and

severe mental anguish and emotional anguish and emotional distress; and for other incidental expenses, and they have suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiffs are thereby entitled to general and compensatory damages in amounts to be proven at trial.

## FOURTH CAUSE OF ACTION
## RETALIATION UNDER THE NEW YORK STATE EXECUTIVE LAW, § 290 *et seq*.

55.     Plaintiffs repeat and re-allege by reference each and every allegations contained in the above stated paragraphs and incorporates the same as though fully set forth herein.

56.     Defendant, through its agent, engaged in a continuing pattern of unremedied race discrimination by subjecting Plaintiffs to disparate treatment based on race in violation of The New York State Human Rights Law, ("NYSHRL") Executive Sections 290, *et seq*. This claim does not raise a novel or complex issue of law.

57.     Defendant at all times relevant herein had actual and constructive knowledge of the conduct described herein.

58.     As a result of the discriminatory treatment based on race that resulted in Plaintiffs' adverse employment actions, the Plaintiffs

Page -14-

suffer from severe emotional distress.

59.    Defendant violated the NYSHRL as amended, by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts and failures to act of the defendants as described above.

60.    Defendant failed to comply with their duty to take all reasonable and necessary steps to eliminate harassment from the workplace and to prevent it from occurring in the future.

61.    As a direct and proximate result of the defendant's willful, knowing and intentional discrimination against them, Plaintiffs have suffered and will continue to suffer pain and suffering and extreme and severe mental anguish and emotional anguish and emotional distress; and for other incidental expenses, and they have suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.  Plaintiffs are thereby entitled to general and compensatory damages in amounts to be proven at trial.

**WHEREFORE,** Plaintiffs pray that judgment be entered in their favor in accord with the causes of action alleged above.

DATED: November 10, 2009
Rochester, New York

By: /s/Christina A. Agola, Esq.

_____
Christina A. Agola

Christina A. Agola,
Attorneys & Counselors at Law, PLLC
2100 First Federal Plaza
28 East Main Street
Rochester, New York 14614
585.262.3320
585.262.3325
caaesq@rochester.rr.com